# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ALEJANDRO HERRERA )
)
      Plaintiff, )     3:11-cv-00026-ECR-VPC
)
    v. )
)    **REPORT AND RECOMMENDATION**
)    **OF U.S. MAGISTRATE JUDGE**
)
MICHAEL POEHLMAN, ET AL. )
)    April 15, 2011
      Defendants. )
_____)

    This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's application to proceed *in forma pauperis* (#1),[1] plaintiff's civil rights complaint (#1-1), and plaintiff's motion for appointment of counsel (#3). In his application and financial affidavit, plaintiff indicates that he does not presently have a job or monthly income (#1, p. 1). Plaintiff claims that at the time he completed the application he had $3.86 in his account at Washoe County Detention Center. *Id.* at 2. Based upon the foregoing, the court grants plaintiff's application to proceed *in forma pauperis*. The court now screens plaintiff's complaint pursuant to 28 U.S.C. § 1915, and addresses plaintiff's motion for appointment of counsel (#3).

## I. HISTORY & PROCEDURAL BACKGROUND

    Plaintiff Alejandro Herrera ("plaintiff"), a *pro se* litigant, is currently housed at Northern Nevada Correctional Center ("NNCC"), though the incident giving rise to the instant complaint did not occur while he was incarcerated and he does not allege facts related to his conditions of confinement (#1-1). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, claiming that defendants conducted an illegal search of his car; employed unnecessary, excessive force against him

---

    [1]    Refers to the court's docket numbers.

using a taser gun; and failed to provide him with timely medical care for his injuries on August 6, 2009 (#1-1).  Plaintiff sues Michael Poehlman, the Reno Chief of Police, in his official capacity; Jason Daniels, the arresting Reno Police Department officer, in his individual and official capacities; Steve Pitts, the Reno Interim Chief of Police, in his official capacity; John Does #1-4 and John Doe #6, Reno police officers, in their individual and official capacities; and John Doe #5, a medical professional/officer, in her individual and official capacities.  *Id.* at 3-5.

Specifically, plaintiff claims in count one that defendant Daniels "performed exploratory questioning . . . to conduct a 10-29 check for wants and warrants."  *Id.* at 6.  Plaintiff states further that defendant Daniels did not identify any outstanding warrants, but conducted a pat-down of plaintiff, which revealed no contraband.  *Id.*  Defendant Daniels then proceeded to illegally search plaintiff's vehicle without his consent and without probable cause.  *Id.*  Plaintiff states that while he was awaiting completion of the illegal search, defendant John Doe #1 "approache[d] the Plaintiff persecuting him (nightstick in hand)."  *Id.*  "[H]aving been informed that he was not under arrest or being detained, but [was] now being held against his will with threats of physical violence from Officer John Doe #1," plaintiff fled the scene and defendants pursued him.  *Id.*  Plaintiff believes these acts violated his Fifth Amendment due process rights.  *Id.*

In count two, plaintiff states that defendant John Doe #2 "willfully and unlawfully inflict[ed] cruel and unusual punishment with excessive force" when he used a taser gun on plaintiff twelve to fifteen times, "while the plaintiff was stuck hanging upsidedown [sic] by his ankles from a six foot chain link fence clearly unarmed and nonaggressive."  *Id.* at 7.  Plaintiff suffered injuries that required medical attention.  *Id.*  Plaintiff argues that defendant John Doe #2 engaged in unconstitutional behavior "under the discretion and authority" of defendants Poehlman and Pitts. *Id.*  Plaintiff also accuses defendants John Doe #3 and John Doe #4 of "ripp[ing] [him] off of the fence and from out of his clothing," handcuffing him, and leaving him lying on the ground exposed and pleading for medical assistance and water.  *Id.*  He notes that defendants "John Doe's [sic] #1, #2, #3, #4, #5 and #6 all failed to offer assistance for approximately 20 minutes or more."  *Id.*  An

2

1  ambulance transported plaintiff to Renown Medical Center, and plaintiff notes that at this time he

2  still had not been charged with a crime.  *Id.*  Plaintiff believes these acts violated his Eighth

3  Amendment rights.  *Id.*

4      In count three, plaintiff argues that defendant Daniels "was improperly trained by Chief of

5  Police Michael Poehlman and/or Chief of Police Steven Pitts."  *Id.* at 8.  Plaintiff believes improper

6  instruction resulted in defendant Daniels' conduct and "holding [plaintiff] against his will while

7  [defendant] Daniels still though no probable cause, conducted a further search of the vehicle without

8  the permission or consent of the owner of the vehicle."  *Id.*  Plaintiff believes these acts violated his

9  Fourth Amendment rights.

10  **II. DISCUSSION & ANALYSIS**

11  **A.   Discussion**

12      **1.   Screening Standard**

13      Applications to proceed *in forma pauperis* are governed by 28 U.S.C. § 1915, which provides

14  that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal

15  (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks

16  monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-

17  (iii).  "To sustain an action under Section 1983, a plaintiff must show (1) that the conduct

18  complained of was committed by a person acting under color of state law; and (2) that the conduct

19  deprived the plaintiff of a federal constitutional or statutory right."  *Wood v. Ostrader,* 879 F.2d 583,

20  587 (9th Cir. 1989), *cert. denied*, 498 U.S. 938 (1990).

21      Dismissal of a complaint for failure to state a claim upon which relief may be granted is

22  provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same standard

23  under Section 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint.

24  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp.*

25  *of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only

26  if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle

27

28

him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations in *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id., see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B.    Analysis**

Plaintiff alleges violations of his Fourth, Fifth, and Eighth Amendment rights (#1-1). Specifically, plaintiff believes that defendant Daniels conducted an illegal search of his car and that defendants Daniels and John Doe #1 held him against his will. *Id.* at 6. Defendant John Doe #2 employed excessive force during plaintiff's illegal arrest by using a taser gun on plaintiff. *Id.* at 7. Further, defendants John Does #3 and #4 left plaintiff naked and pleading for medical attention for the injuries he sustained from being tasered, and defendants John Does #1, #2, #3, #4, #5, and #6 all failed to help plaintiff for at least twenty minutes. *Id.* Finally, plaintiff argues that defendant Daniels

1    actions were the result of inadequate training from defendants Poehlman and Pitts. *Id.* at 8.

2         At the outset, the court notes: "Where a particular amendment 'provides an explicit textual

3    source of constitutional protection' against a particular sort of government behavior, 'that

4    Amendment, not the more generalized notion of "substantive due process," must be the guide for

5    analyzing [a plaintiff's] claims.'" *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) (Rehnquist, C.J.,

6    for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Therefore, plaintiff's claims

7    will be analyzed under the Fourth Amendment standard for excessive force during seizure and

8    arrest,[2] rather any generalized notions of due process under the Fourteenth Amendment.[3]

9         **1.    Defendants**

10             **a.    Official Capacity Suits**

11        Plaintiff brings suit against defendant Daniels and defendants John Does #1, #2, #3, #4, #5,

12   and #6 in their official and individual capacities, and against defendants Poehlman and Pitts in their

13   official capacities only.  The claims against these defendants in their official capacities are actually

14   suits against the entity of which the named defendants are agents. *See Kentucky v. Graham*, 473 U.S.

15   159 (1985).  "As long as the government entity receives notice and an opportunity to respond, an

16   official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

17   at 166.  The real party in interest in such suits is the entity itself, and the entity, not the named

18   defendant, will be liable for any damages. *Id.*  Thus, the official capacity claims against defendants

19   are properly considered claims against the entity they serve - the City of Reno.

20

21        [2]    Plaintiff asserts his excessive force claims under the Eighth Amendment's ban on cruel and
     unusual punishment.  However, when law enforcement officers use excessive force against an individual
22   during seizure or arrest, they violate the individual's Fourth Amendment rights. *Graham v. Connor*, 490 U.S.
     386, 394 (1989) ("[A] convicted prisoner is protected from excessive force by the Eighth Amendment and
23   a citizen being arrested or investigated is protected from excessive force by the Fourth Amendment.").

24

25        [3]    Plaintiff claims that defendants violated his due process rights under the Fifth Amendment.
     "The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only
26   to actions of the federal government – not to those of state or local governments." *Lee v. City of Los Angeles*,
     250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).  Plaintiff does not
27   allege that any of the defendants are federal actors.  Therefore, any due process claims alleged by plaintiff
     should have been asserted under the Fourteenth Amendment.  However, as stated above, based upon the facts
28   provided by plaintiff the court analyzes plaintiff's claims according to the more explicit protection available
     under the Fourth Amendment.

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), held that municipalities, such as the City of Reno, are "persons" subject to damages liability under Section 1983 where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Id.* at 691. The Court emphasized that the municipality itself must cause the constitutional deprivation, and that a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Id.* Claims for municipal liability under Section 1983 can be "based on nothing more than bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).

Here, plaintiff does not allege that any of the defendants' actions conformed to an official policy, custom, or practice of the City of Reno. Rather, plaintiff believes that defendants, acting under color of state law, violated his constitutional rights - acts for which the City of Reno may not be held vicarious liable. Therefore, all official capacity suits against defendants are dismissed with prejudice.

**2.      Claims**

**a.      Fourth Amendment - Illegal Search & Arrest**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. As a general rule, searches and seizures violate the Fourth Amendment unless they are based on probable cause and executed pursuant to a valid warrant or are subject to the limited number of exceptions carved out by the Supreme Court within which a warrant is not required. *Katz v. United States,* 389 U.S. 347, 357 (1967); *Minnesota v. Dickerson,* 508 U.S. 366, 272 (1993); *United States v. Huguez-Ibarra,* 954 F.2d 546, 551 (9th Cir.1992). Plaintiff states a claim for illegal search of his car against defendant Daniels.

Plaintiff's complaint does not allege that he was ever arrested by any of the defendants. Rather, the complaint states that following the tasering, "[p]laintiff, now unconscious, was taken to Renown Medical Center, ER, Chest Trauma Center and at this time was till not charged with any crime." It is unclear to the court whether defendants arrested plaintiff prior to or following plaintiff's admission to the hospital. As a result, plaintiff fails to state a claim for illegal arrest; therefore, the claim is dismissed without prejudice. Plaintiff is granted leave to amend his complaint to allege

1   facts, if possible, that describe his arrest and name the arresting officer(s).

2          **b.**       **Fourth Amendment - Excessive Force**

3         Claims that law enforcement officers employed excessive force in the course of a seizure or

4   arrest of an individual are analyzed under the Fourth Amendment. *Smith v. City of Hemet,* 394 F.3d

5   689, 700 (9th Cir. 2005) (citing *Graham v. Connor,* 490 U.S. 386 (1989)); *Ward v. City of San Jose,*

6   967 F.2d 280 (9th Cir. 1992) (as amended)).  The key inquiry in such claims is the reasonableness

7   of the non-deadly force used, which requires balancing "the nature and quality of the intrusion on

8   the individual's Fourth Amendment interests against the countervailing government interests at

9   stake." *Miller v. Clark County,* 340 F.3d 959, 964 (9th Cir. 2003) (quotations omitted).  Courts

10  engage in a three-step analysis to make this determination. *Id.* First, the court must assess "the

11  gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount

12  of force inflicted." *Id.*  Second, the court must assess "the importance of the government interests

13  at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an

14  immediate threat to the safety of the officers or others, and (3) whether the suspect was actively

15  resisting arrest or attempting to evade arrest by flight." *Id.*  Third, the court may consider other

16  factors, including "the availability of alternative methods of capturing or subduing a suspect." *Smith,*

17  394 F.3d at 701.

18        Plaintiff states an excessive force claims against defendant John Doe #1 for imposing a threat

19  of physical violence to detain him, defendant John Doe #2 for using a taser gun against him twelve

20  to fifteen times, John Does #3 and #4 for forcefully removing him from the fence and leaving him

21  naked without medical care or water, and against defendants John Doe #1, #2, #5, and #6 for failing

22  assist him while he was in physical pain from the tasering.[4]

23          **c.**      **Supervisory Liability**

24        "Liability under [§] 1983 arises only upon a showing of personal participation by the

25  defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the

26  supervisor participated in or directed the violations, or knew of the violations and failed to act to

27  

28        [4]     Plaintiff also states that defendants John Does #3 and #4 failed to assist him, but these claims
    are duplicative of plaintiff's allegation that these defendants did not provide him with medical care or water.

1   prevent them.  There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d

2   1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th

3   Cir. 2007); *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding

4   it is proper to dismiss where there are no allegations of knowledge of or participation in an alleged

5   violation). Here, plaintiff alleges that defendants Poehlman and Pitts "improperly trained" defendant

6   Daniels.  As improper training is not a constitutional violation, plaintiff fails to state a claim against

7   defendants Poehlman and Pitts.  Further, these defendants may not be held vicariously liable for

8   defendant Daniels' acts.   Therefore, plaintiff's supervisory liability claims against defendants

9   Poehlman and Pitts are dismissed with prejudice.

10   **C.      Motion for Appointment of Counsel**

11   Plaintiff has filed a motion seeking the appointment of counsel in this case ( #3).  A litigant

12   in a civil right action does not have a Sixth Amendment right to appointed counsel. *Storseth v.*

13   *Spellman*, 654 F.2d 1349, 13253 (9th Cir. 1981).  In very limited circumstances, federal courts are

14   empowered to request an attorney to represent an indigent civil litigant.  The instances in which a

15   court will make such a request, however, are exceedingly rare, and the court will make the request

16   under only extraordinary circumstances. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-

17   800 (9th Cir. 1986); *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986).

18   A finding of such exceptional circumstances requires that the court evaluate both the

19   likelihood of success on the merits and the plaintiff's ability to articulate his claims in *pro se* in light

20   of the complexity of the legal issues involved.  Neither factor is dispositive, and both must be viewed

21   together in making a finding. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991)(*citing Wilborn,*

22   *supra*, 789 F.2d at 1331).  The court has considerable discretion in making these findings.  The court

23   will not enter an order directing the appointment of counsel, as plaintiff has demonstrated his ability

24   to articulate his claims in *pro se*.  Therefore, this court recommends that plaintiff's motion for the

25   appointment be denied.

26                                **III.  CONCLUSION**

27   Based on the foregoing and for good cause appearing, the court recommends that plaintiff's

28   application to proceed *in forma pauperis* be granted.  Further, the court recommends that plaintiff's

Fourth Amendment illegal search claim against defendant Daniel and his Fourth Amendment excessive force claims be permitted to proceed.  Plaintiff's Fourth Amendment illegal arrest claim should be dismissed without prejudice and with leave to amend according to this Report and Recommendation.  The court recommends that plaintiff's remaining claims be dismissed with prejudice in accordance with the guidance provided in this Report and Recommendation.  Finally, the court recommends that plaintiff's motion for the appointment of counsel be denied.  The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's application to proceed *in forma pauperis* (#1) be **GRANTED**.  Plaintiff **Alejandro Herrera**, will be permitted to maintain this action to conclusion without prepayment of the full filing fee.  Plaintiff will not be required to pay fees or costs, other than the filing fee, or give security therefor.  This Order granting *in forma pauperis* status shall not extend to the issuance and service of subpoenas at government expense.

**IT IS FURTHER RECOMMENDED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act of 1996.

**IT IS FURTHER RECOMMENDED** that, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act of 1996, the Nevada Department of Corrections shall pay the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to plaintiff's account (in months that the account exceeds $10.00), until the full $350 filing fee has been paid for this action.  **The Clerk shall send a copy of this order to Albert G. Peralta, Chief**

1  **of Inmate Services, Nevada Department of Prisons, P.O. Box 7011, Carson City, NV 89702.**

2        **IT IS FURTHER RECOMMENDED** that the Clerk shall file the complaint (#1-1).

3        **IT IS FURTHER RECOMMENDED** that the following claims in plaintiff's complaint (#1-

4  1) be permitted to **PROCEED**:

5        (1) Fourth Amendment illegal search against defendant Daniels; and

6        (2) Fourth Amendment excessive force against defendant Daniels and defendants John Doe

7        #1, #2, #3, #4, #5, and #6.

8        **IT IS FURTHER RECOMMENDED** that the following claims in plaintiff's complaint (#1-

9  1) be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** according to the

10  guidance provided in this Report and Recommendation:

11        1) Fourth Amendment illegal arrest.

12        **IT IS FURTHER RECOMMENDED** that the following claims in plaintiff's (#1-1)

13  complaint be **DISMISSED WITH PREJUDICE** for the reasoning articulated in this Report and

14  Recommendation:

15        1) Official capacity suits against all defendants; and

16        2) Supervisory liability against defendants Poehlman and Pitts.

17        **IT IS FURTHER RECOMMENDED** that in accordance with this Report and

18  Recommendation, defendants Pohlman and Pitts be **DISMISSED** from this action.

19        **IT IS FURTHER RECOMMENDED** that plaintiff's motion for the appointment of counsel

20  (#3) be **DENIED**.

21        **DATED:**  April 15, 2011.

22

23  *Valerie P. Cooke*

24  _____

25        **UNITED STATES MAGISTRATE JUDGE**

26

27

28